**PATHMARK STORES, INC., Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS LOCAL 342–50, AFL–CIO, Richard Abondolo, Lisa O'Leary, Fred Steiniger, Kelly Egan, and John Does 1–25, Defendants.**

No. 01–CV–7382(NGG).

United States District Court,
E.D. New York.

May 29, 2002.

Marvin Goldstein, Proskauer Rose LLP, New York City, for plaintiff.

Daniel Engelstein, Levy, Ratner & Behroozi, P.C., New York City, for defendants.

*MEMORANDUM & ORDER*

GARAUFIS, District Judge.

This case arises out of a labor dispute between the employer, Pathmark ("Path-

mark" or alternatively "Plaintiff"), and the labor union representing Pathmark employees, United Food and Commercial Workers Local 342 50 ("Defendant" or alternatively the "Union", or "Local 342"). Defendant now moves this court to dismiss Plaintiff's complaint on the pleadings. Plaintiff opposes this motion and cross-moves for leave to file a second amended complaint. For the reasons discussed below, Defendant's motion to dismiss is granted in its entirety and Plaintiff's cross-motion to amend the complaint is denied.

## I. Factual Background

Pathmark and Local 342 are parties to a collective bargaining agreement (the "CBA"), which covers Pathmark employees who belong to Local 342 and engage in cutting, wrapping and selling fresh and smoked meat, poultry, and fish. (Am. Compl.¶ 12.) Article XXIII of the CBA is titled, "Grievance Procedure and Arbitration," and it provides the following procedures for filing of employee grievances and arbitration of labor disputes:

> Should differences arise between the Union and its members and the Employer as to the interpretation, application or enforcement of any of the provisions of this Agreement, except differences which arise involving contributions to the Welfare, Pension, Safety–Education–Cultural or Legal Funds, they shall be handled in the following manner:
>
> (a) The aggrieved employee and Steward or Union Representative of the Union, or either, may not later than thirty (30) days following the occurrence of the grievance, present and discuss same with the Store Manager or such other person designated by the Employer. If not presented within thirty (30) days of its occurrence, the grievance shall be considered waived.
>
> (b) If not settled at the store level, the Union Representative may then present the grievance in writing to the Employer's Personnel manager or other designated representatives. An answer to the grievance shall be submitted in writing to the Union not more than three (3) days after its presentation.
>
> (c) *Arbitration*
>
> 1. Upon receipt of an answer to the grievance as set forth in Section (B) of Article XXIII above, the aggrieved shall notify the other party in writing within five (5) calendar days of its intent to arbitrate and so notify either the designated member of the arbitration panel or the American Arbitration Association as provided below.
>
> 2. In the event of a dispute involving solely the issue of the discharge of an employee, the following procedure shall be followed:
>
> .    .    .    .    .
>
> 3. In the event of any other type of dispute, the parties may by mutual agreement utilize the procedures set forth above. In the event they fail to so agree, then such dispute will be resolved pursuant to the procedure for voluntary labor arbitration established by the American Arbitration Association.
>
> 4. In all arbitration proceedings, the following shall apply:
>
> .    .    .    .    .
>
> (d) This Agreement shall not vest or create in any employee or group of employees any rights or privileges which they or any of them could enforce. All rights, including the rights of enforcement of the provisions of this Agreement and remedies for breach thereof by the Employer, shall rest solely with the Union.

(Am. Compl., Ex. A at 20–22, Agreement, Article XXIII.)

In November 1999, the Union filed two grievances challenging Pathmark's introduction and sale of pre-packaged, "case-

ready" meat products, which allegedly reduced the amount of in-store packaging by members of Local 342. (Am.Compl.¶¶ 21–22.) In response, Pathmark answered the grievances and attempted to present its own counter-grievance to the Union. Pathmark was informed, by letter from the Union's legal representative, that the grievance procedure was only for employees and that Pathmark had no right under the CBA to file a grievance or request arbitration of a grievance. (Cert. of Marvin M. Goldstein, Esq. In Opp'n To Def.'s Mot., Ex. A). The Union then filed a demand for arbitration. (Am. Compl.¶¶ 21–22.)

In April 2000, Local 342 began distributing handbills at Pathmark stores publicizing this labor dispute. By September 2000, however, the Union withdrew its demand for arbitration and Pathmark and the Union entered into negotiations for a mid-term amendment to the CBA. On February 9, 2001, the amendment was incorporated into the CBA. The amendment provided certain guarantees of employment, beyond those in the existing CBA, in exchange for the cessation of hand billing. (*Id.* ¶¶ 24–28.)

Pathmark's complaint alleges that subsequent to this amendment to the CBA, the Union continued hand billing, as well as engaging in other conduct to publicize the dispute over case-ready meat and interfering with Pathmark's operations and hiring of employees. (*Id.* ¶¶ 29–82.) In response, Pathmark again tried filing a grievance against the Union, alleging a violation of the "no strike" provision of the CBA. Again, Union counsel told Pathmark that it had no right to use the grievance procedures in the CBA. (Mem. in Supp. of Defs.' Mot. for J. on the Pleadings, Ex. B.) Pathmark then filed this lawsuit.

## II. Discussion

### A. Issues Presented in this Motion to Dismiss

Pathmark's amended complaint alleges that the Union breached the terms of the CBA and committed various defamatory and tortious acts. It asserts five claims: 1) material breach of contract based on the February 9, 2001 Letter Agreement; 2) breach of contract based on the underlying CBA; 3) slander per se; 4) libel per se; and 5) tortious interference with contractual relations. (Am.Compl.¶¶ 86, 95, 105, 112.) The first and second claims are presented as breach of contract claims brought pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). In the instant motion, however, the Union asserts that Pathmark's first and second claims are arbitrable under the CBA and, therefore, are not properly before this court. Further, the Union argues, upon the dismissal of the contract claims, this court should decline to maintain jurisdiction over the pendent state law claims and the complaint must be dismissed in its entirety. Pathmark opposes this motion, arguing that because the employer has no right to file grievances and initiate arbitration of disputes under the contract (which only provides such a mechanism for the Union), Pathmark has properly brought its breach of contract claim to federal court pursuant to Section 301(a).

Thus, the primary issue to be decided by this court is whether or not Pathmark's disputes with the Union are subject to arbitration under the terms of the CBA. Because I find that the dispute is arbitrable, I decline to maintain jurisdiction over the pendent state law claims and need not reach the question of whether those claims would survive on the merits.[1] According-

---

1. Pathmark does not dispute that should the contract based claims be dismissed, the pen- dent state law claims also should be dismissed.

ly, the following discussion addresses only the issue of arbitrability.

## B. The Presumption of Arbitrability

■ Since 1960, when the Supreme Court decided the *Steelworkers Trilogy*[2], the Court and this Circuit have faithfully adhered to the well settled rule that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *see also AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648–50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (discussing and applying principles of the *Steelworkers Trilogy* ); *Coca–Cola Bottling Co. v. Soft Drink and Brewery Workers*, 242 F.3d 52, 56–57 (2d Cir.2001) (applying rule of *Warrior & Gulf* and finding employer-initiated complaint was arbitrable).

■ The Supreme Court has extracted four principles from the *Steelworkers Trilogy* that control the issue of arbitrability now before this court. First, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.' " *AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. 1415 (quoting *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. 1347). Second, "the question of arbitrability ... is undeniably an issue for judicial determination." *Id.* at 649, 106 S.Ct. 1415. Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* at 649., 80 S.Ct. 1347 And, fourth, and most important in deciding the instant motion, "where the contract contains an arbitration clause, there is a presumption of arbitrability. ... Such a presumption is particularly applicable where the clause is [ ] broad. ... In such cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " *Id.* at 650, 80 S.Ct. 1347 (quoting *Warrior & Gulf*, 363 U.S. at 582–85, 80 S.Ct. 1347).

Applying the above principles, the Second Circuit has repeatedly relied on the presumption of arbitrability to find that arbitration clauses, which are arguably geared toward employee grievances, also allow employer-initiated disputes to go to arbitration. *See Coca–Cola*, 242 F.3d at 57; *see also Interstate Brands Corp. v. Bakery Drivers*, 167 F.3d 764, 767–68 (2d Cir.1999) (holding employer had contractually waived its right to litigate contract claim and was bound to arbitrate); *ITT World Communications, Inc. v. Communications Workers of Am.*, 422 F.2d 77, 81 (2d Cir.1970) (relying on "positive assurance" rule to conclude that employer claims were subject to arbitration). Notably, less than a month before this court heard oral arguments in this case, the Second Circuit again emphasized that although traditional rules of contract interpretation generally apply to these types of cases, they are not always "readily [ ] transposed into the context of national labor law—as though the notion 'one size fits all' applies in the law. On the contrary, in labor law there are other policies to con-

---

2. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; · *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960).

sider, in particular the strong presumption in favor of arbitrability...." *Mulvaney Mechanical, Inc. v. Sheet Metal Workers Int'l Ass'n,* 288 F.3d 491, 2000 WL 33730559, at *1 (2d Cir. Apr.24, 2002) (holding that presumption of arbitrability precluded employer from unilaterally repudiating its CBA despite union's breach of no-strike clause).

## C. Interpretation of "Article XXIII: Grievance Procedures and Arbitration"

In the instant case, whether or not the dispute is arbitrable is determined by interpretation of Article XXIII of the CBA contract, consistent with the above rules governing interpretation of labor contracts. Article XXIII sets out the guidelines for filing grievances and taking disputes to arbitration. Thus, it covers two distinct, albeit often related issues: 1) who can file a grievance and how, and 2) when and how to arbitrate different types of disputes.

▪ Pathmark argues that a proper interpretation of Article XXIII demonstrates that arbitration is absolutely dependent on the filing of a grievance by an employee. Pathmark supports this conclusion by insisting that Section (c), titled *"Arbitration"*, only makes sense when read as dependent on Sections (a) and (b), both of which deal with the filing of employee grievances. Therefore, because only employees can file grievances, and because only the Union can take an employee grievance to arbitration, the Article only provides for the initiation of arbitration by the Union, not by Pathmark. In contrast, the Union, argues that the broad language found in Article XXIII, especially in Subsection 3 of Section (c) provides for arbitration of disputes that do not go through the employee grievance procedure and, therefore, permits for the arbitration of Pathmark's employer-initiated dispute.

As discussed below, I find that several aspects of the contract's language and structure suggest that Pathmark's interpretation of the CBA is not the only feasible reading of Article XXIII, and that as the Union argues, the CBA can be read to permit employer-initiated arbitration.

First, the title of Article XXIII and its introductory paragraph, which sets out the scope and purpose of the entire Article, both indicate the Article's broad purpose. The title "Grievance Procedure and Arbitration," indicates that the article addresses two separate processes, the filing of grievances *and* the initiation of arbitration. It does not tend to suggest, as might the phrasing, "Grievance and Arbitration Procedure" that there is one completely interrelated process. Further, the introductory paragraph uses very general language stating **"should differences arise between the Union and its members and the Employer** as to the interpretation, application or enforcement **of any of the provisions of this Agreement,** except differences which arise involving contributions to the Welfare, Pension, Safety Education Cultural or Legal Funds, they shall be handled in the following manner." (Am. Compl., Ex. A at 20.) (emphasis added) Except for the explicitly listed exclusions, this wording in no way indicates that the procedures to follow apply only to employee "grievances" or employee initiated disputes.

The above quoted language found in the introductory paragraph is at least as broad, if not more so, than comparable language found in the arbitration clauses in the *Coca–Cola* and *ITT* cases, both of which found an employer-initiated dispute arbitrable. In *Coca–Cola,* the arbitration clause said, " 'all complaints, disputes, controversies or grievances between the Company and its employees, or between the Union or any member of the Union and

the Company' are subject to mandatory and binding arbitration 'after full satisfaction of the grievance procedure.' " *Coca-Cola,* 242 F.3d at 56. And, in *ITT,* the equivalent clause stated: "Any matters disputed or in disagreement, or the subject of any controversy between the parties ... which the parties cannot adjust satisfactorily under the Grievance Procedure, may be submitted to arbitration for final and binding determination." *ITT* 422 F.2d at 78–79. As in those contracts, which covered "all disputes" and "any matters disputed", the broad language in the introductory paragraph of Article XXIII suggests that the following arbitration provisions generally apply to "differences" related to "any" provision of the agreement, not only to employee griev-

ances. Moreover, even though the *Coca-Cola* contract explicitly stated that disputes were subject to arbitration only "after full satisfaction of the grievance procedure," such language was not sufficiently explicit to create positive assurance that employee-initiated grievances were a prerequisite to *all* types of arbitration. *Coca-Cola,* 242 F.3d at 56–57. If the Second Circuit could find that such arbitration language, which specifically referred back to grievances, did not prohibit employer-initiated arbitration, then the even less specific arbitration language found in the instant CBA should not be read any less broadly.[3]

Second, the CBA does not expressly exempt employer-initiated disputes from arbitration. In contrast, there is one specif-

---

3. Pathmark tries to differentiate this case from *Coca Cola* and *ITT* by arguing that in those cases the grievance procedures and the arbitration procedures were contained in separate articles. (Pl. Pathmark Stores, Inc.'s Mem. of Law in Opp'n to Defs.' Mot. for J. on the Pleadings (hereinafter .Pl.'s Mem. of Law in Opp'n) at 18–19.) The use of separate articles, Pathmark argues, provided a basis, not present here, for finding that those arbitration clauses were not dependent on the employee grievance procedures, and therefore allowed for employer-initiated arbitration. Pathmark even goes so far as to say, "the *ITT* Court found it significant that the grievance procedure in the collective bargaining agreement was in a separate article from the arbitration procedure." (*Id.* at 19 citing *ITT* 422 F.2d at 82 n. 8.)

First, Pathmark's reading of *ITT* is simply incorrect. In *ITT,* the Union used a similar argument as Pathmark does here, but in support of finding arbitration. In an attempt to differentiate its contract from the one in *G.T. Schjeldahl Co. v. Local Lodge 1680,* 393 F.2d 502 (1st Cir.1968), which the First Circuit held did not require employer arbitration, the Union argued that the *Schjeldahl* contract had a single article controlling grievance and arbitration, whereas the *ITT* contract separated these procedures into two articles. In the very footnote which Pathmark cites, the Court responded to this argument by calling it an "asserted and perhaps overly technical 'dis-

tinction' " and then proceeded to decide the issue irrespective of any such "distinctions". *ITT* 422 F.2d at 82, 82 n. 8. Thus, the *ITT* court clearly rejected the distinction, which Pathmark relies upon, as a basis for deciding when employer disputes are arbitrable.

Moreover, I do not find in this case, in view of the other aspects of the contract language discussed herein, that the use of one article as opposed to two articles is a meaningful indicator of whether employer-initiated arbitration is allowed under the CBA. The grievance procedures and arbitration procedures are in distinct Sections within the one article. This creates the same separation of procedures that the use of two articles might otherwise create. And, here, as in *Coca-Cola* and *ITT,* there is language linking arbitration to the grievance procedure by reference, yet, as in those cases, this linkage does not require a finding that the arbitration language can only apply to employee-initiated disputes. *See Coca-Cola,* 242 F.3d at 56 (rejecting employer's argument that because the "arbitration clause was linked with the employee-only grievance procedure [it] therefore covered only employee grievances"); *ITT* 422 F.2d at 79–81 (rejecting employer's argument that language which "interlinke[d]" grievance and arbitration articles required all arbitrations to flow from employee grievances).

ic category of exclusion in the arbitration article, demonstrating that the parties knew how to expressly exclude certain disputes from arbitration when they so intended. The introductory paragraph singles out differences which arise over contributions to various employee funds as being exempt from the procedures found in Article XXIII. As the court held in *Coca–Cola*, "if the parties had wished to limit the arbitration clause to employee-initiated grievances, they could have done so explicitly" as they did elsewhere in the arbitration provision. *Coca–Cola* 242 F.3d at 57. Similarly, here, the failure to include an express exemption for the employer, especially in light of this Circuit's well-known presumption of arbitrability, weighs against Pathmark's reading of the contract. *See Warrior & Gulf*, 363 U.S. at 581, 80 S.Ct. 1347 ("Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement."); *Coca–Cola*, 242 F.3d at 57 n. 3 (noting need for specific exclusion "was hardly unforeseeable given the volume of cases before the Supreme Court and the circuits over the last 40 years" addressing arbitrability of employer-initiated suits); *ITT*, 422 F.2d at 82 ("The combination of a broad arbitration clause and vague or no exclusionary language has usually, since the Trilogy, led to arbitration.").

Third, Section (c) is titled *"Arbitration,"* and is thus notably separated from the grievance procedures found in Sections (a) and (b). Moreover, within Section (c) there are three subsections identifying three different processes for moving a dispute to arbitration. The third one states: **"In the event of any other type of dispute** the parties may by mutual agreement utilize the procedures set forth above ... [or they] will be resolved pursuant to the procedure for voluntary labor arbitration...." (Am. Compl., Ex. A at 21, Article XXIII, (c)(3).) (emphasis added). "The language of this arbitration clause could hardly be broader...." *Associated Brick Mason Contractors v. Harrington*, 820 F.2d 31, 33–36 (2d Cir.1987) (describing arbitration language in Article VIII, Section I of contract which required that "all complaints, disputes, or grievances ... or any acts ... between the parties ... claiming to be aggrieved shall be submitted" to arbitration). Terminology such as, "any other dispute" and "the parties," is exceedingly broad and implies no exceptions to the clause, or limitations on who may initiate arbitration. Moreover, it makes no reference to grievances, let alone employee-initiated grievances. The failure to place a direct reference to employee grievances in the text of Subsection 3, suggest that the Subsection 3 was intended for use in dealing with other types of disputes as well. Thus, Subsection 3 of Section (c) presents strong evidence that the contract was intended to require employer disputes to go to arbitration.

Pathmark, of course, does not concede that this reading of Subsection 3 is correct, or even rational. Pathmark asserts that Subsection 3 simply cannot be read as independent of Subsection 1, which directs how employee grievances shall be sent to arbitration. First Pathmark points out that (c)(1) follows from the previous filing of an employee grievance: "Upon receipt of an answer to the grievance as set forth in Section B of Article XXIII above, the aggrieved shall notify the other party in writing ... of its intent to arbitrate." (Am. Compl., Ex. A at 21.) The provision then directs that the party "notify the designated member of the arbitration panel or the American Arbitration Association as provided below." (*Id.*) Pathmark argues that these references, in (c)(1), to arbitration by either the arbitration panel, a process which is described in (c)(2) with

respect to employee discharge, or the American Arbitration Association, a process described in (c)(3), make it impossible to read (c)(3) independently of (c)(1). Under Pathmark's interpretation, the reference in (c)(3) to "any other type of dispute," is only intended to refer to any other type of grievance besides an employee discharge grievance handled under (c)(2). While this interpretation is plausible, I cannot agree that it is the only reasonable interpretation. *See Coca–Cola,* 242 F.3d at 56–57.

I agree that Subsection 1 directs, by reference, that employee grievances follow the process for arbitration pursuant to either Subsection 2 or Subsection 3, depending on the nature of the grievance. That does not necessarily mean, however, that (c)(3) cannot *also* serve as the default arbitration process for all other disputes, as its plain language suggests. If Subsection 3 were structured as an internal clause to Subsection 1, Pathmark's argument that it was intended only as an arbitration process to be followed upon the completion of (c)(1) would be stronger.[4] But it is not. In fact, structurally, it stands on equal footing with Subsection 1, as one of three independent arbitration categories contained under Section (c). Thus, it is reasonable to infer that the step-by-step process from (b) to (c)(1) to (c)(3) only applies to employee-initiated arbitration, but that employer-initiated arbitration may start independently at (c)(3). This interpretation would distinguish employee from employer-initiated arbitration so as to ensure that employees first follow the grievance procedures, while not preventing the employer from arbitrating its disputes as well.

Such an interpretation is not only reasonable, but also consistent with Second Circuit precedent. In *Coca–Cola,* the employer presented a similar argument as does Pathmark. CocaCola insisted that the arbitration clause could only be read reasonably in connection with the employee grievance procedures. The Second Circuit rejected that argument, holding:

> "While Coca–Cola's reading of the CBA is plausible, it is not the only reasonable interpretation. For example, the insertion of 'after full satisfaction of the grievance procedure' may have been intended to clarify that employees could not bypass the newly inserted Article 44 grievance procedure and proceed directly to arbitration.... We cannot say 'with positive assurance,' therefore, that the insertion of the clause was necessarily intended to preclude employer-initiated complaints from arbitration."

*Coca–Cola,* 242 F.3d at 56–57. Similarly, I cannot say with "positive assurance" that in this case the references in (c)(1) were necessarily intended to exclude employer-initiated complaints from the broadly phrased (c)(3) arbitration clause.

Finally, I note that although not relied on at oral arguments, in its briefing papers Pathmark cites extensively to cases from other circuits. Pathmark cites these cases for the proposition that where a grievance and arbitration procedure is "wholly employee oriented," the court may conclude with "positive assurance" that the contract is not susceptible of a construction that the employer is bound to arbitrate its claims. (*See* Pl.'s Mem. of Law in Opp'n at 15–19, citing *Friedrich v. Local No. 780,* 515 F.2d 225 (5th Cir.1975); *Faultless Div. v. Local Lodge No.2040,* 513 F.2d 987 (7th Cir. 1975); *Affiliated Food Distribs. v. Local 229,* 483 F.2d 418 (3d Cir.1973); *Firestone Tire & Rubber Co. v. Int'l Union of United*

---

4. This type of structure was used in Subsection 2, which includes three sub-paragraphs, (i), (ii) and (iii), identifying arbitration procedures that apply solely to Subsection 2. (Am. Compl., Ex. A at 21.)

*Rubber Workers,* 476 F.2d 603 (5th Cir. 1973); *G.T. Schjeldahl Co. v. Local Lodge 1680,* 393 F.2d 502 (1st Cir.1968); *Boeing Co. v. Int'l Union, United Auto Workers,* 370 F.2d 969 (3d Cir.1967).)

As an initial matter, I note that these cases are not controlling on this court. More importantly, however, they are not persuasive in light of the Second Circuit's own long, and well established line of cases controlling this issue. As the above discussion of this Circuit's case law demonstrates, even when contracts have grievance procedures which are only for employees and even when these procedures are a prerequisite for employee-initiated arbitration, an otherwise broad arbitration clause can, and should, be read to allow employer complaints to go to arbitration. Thus, it is not surprising that Pathmark has failed to point to a single Second Circuit decision, or district court decision in this Circuit, in which an arbitration clause similar to the one at issue was found sufficiently narrow to preclude arbitration of an employer claim. Moreover, in the more than twenty-five years since the cases cited by Pathmark were decided, the Second Circuit has yet to adopt their analysis. To the contrary, as early as 1970, this Circuit indicated that its analysis was distinct from that developed in the First and Third Circuits. *See ITT,* 422 F.2d at 82 (discussing *Schjeldahl* and *Boeing* but declining to adopt analysis of either or to distinguish the case at hand from those cases, instead relying solely on its own analysis). Accordingly, I do not find the cases cited by Plaintiff persuasive, and my decision is grounded in the precedent of this Circuit.[5]

### III. Conclusion

For the reasons stated above, I find that the Pathmark's claims against the Union for violating the terms of the CBA and the February 9, 2001 amendment are arbitrable disputes under Article XXIII of the CBA. Therefore, Pathmark's first and second claims in the Amended Complaint, involve "differences .... as to the interpretation, application or enforcement of ... the provisions of [the CBA]", (Am. Compl., Ex. A, Article XXIII), and are questions "for the arbiter, not for the courts." *Warrior & Gulf,* 363 U.S. at 585, 80 S.Ct. 1347. Having decided that the federal question claims are not properly before this court, I decline to maintain jurisdiction over the pendent state law claims. Accordingly, it is hereby ORDERED that Defendant's motion to dismiss the complaint with prejudice is GRANTED and Plaintiff's cross-motion to file a second amended complaint is DENIED.

SO ORDERED.

---

5. Pathmark also argues, in one brief paragraph, that Section (d) demonstrates the "unilateral nature" of the arbitration procedures, emphasizing that this Section states that the right to file grievances and demand arbitration "shall rest solely with the Union." (Pl.'s Mem. of Law in Opp'n at 12.) Read in its entirety, however, Section (d) also states that "all rights ... and remedies for breach thereof by the Employer shall rest solely with the Union." *Id.* The only sensible reading of this paragraph is that it is meant to prevent employees from individually demanding arbitration or enforcing other provisions of the contract. Thus, it clarifies that any rights created by the CBA, which are vested in the *employees,* must be enforced through the Union. This Section does not speak to the employer's rights. To read it otherwise would effectively leave Pathmark with no enforceable rights under the contract. *See, e.g., ITT,* 422 F.2d at 79 (finding that contract which contained clause stating, "only the Union shall have the right to invoke arbitration of grievances processed in Article V" allowed for employer-initiated arbitration). Thus, the language of Section (d) does not alter my above analysis of Article XXIII.