The COCA–COLA BOTTLING COMPANY OF NEW YORK, INC., Plaintiff–Appellant,

v.

SOFT DRINK AND BREWERY WORKERS UNION LOCAL 812, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendant–Appellee.

No. 99–9232.

United States Court of Appeals, Second Circuit.

Argued: April 3, 2000.

Decided: Feb. 26, 2001.

Philip M. Halpern, Pirro, Collier, Cohen & Halpern, LLP, White Plains, New York, for plaintiff-appellant.

James F. Wallington, Baptiste & Wilder, P.C., Washington, D.C. (Robert M. Baptiste, Baptiste & Wilder; Sidney Fox and Gina M. Fonseca, Shapiro, Beilly, Rosenberg, Albert & Fox, New York City, on the brief), for defendant-appellee.

BEFORE: JOHN M. WALKER, Jr., Chief Judge, OAKES, and WINTER, Circuit Judges.

WINTER, Circuit Judge.

The Coca–Cola Bottling Company of New York ("Coca–Cola") appeals from Judge Brieant's order denying its motion for summary judgment and compelling arbitration pursuant to its collective bargaining agreement ("CBA") with appellee Soft Drink and Brewery Workers Union Local 812, International Brotherhood of Teamsters, AFL—CIO (the "Union").

The Union asserts that we lack appellate jurisdiction because of Section 16 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, § 16(b) ("Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order . . . directing arbitration to proceed under section 4 of this title . . ."). Coca–Cola responds that the FAA is inapplicable because it excludes from its terms "contracts of employment" of transportation workers.

We hold that in cases brought under Section 301 of the Labor Management Relations Act of 1947 ("Taft–Hartley Act"), 29 U.S.C. § 185, the FAA does not apply. We also hold that we have appellate jurisdiction and that the arbitration clause of the CBA can plausibly be read to cover the instant dispute. Finally, we hold that the Union did not waive its right to arbitration. We therefore affirm.

## BACKGROUND

On June 1, 1996, Coca–Cola and the Union entered into a CBA that remains in effect through May 31, 2006. It appears that the CBA covers various drivers engaged in the distribution of Coca–Cola products. The CBA contains both a no-strike provision and a provision ordering arbitration of "all complaints, disputes, controversies or grievances between [Coca–Cola] and its employees, or between the Union or any member of the Union

and [Coca–Cola] ... after full satisfaction of the [CBA's] grievance procedure."

On March 15, 1999, Coca–Cola unilaterally instituted a post-accident drug-testing policy. Claiming that Coca–Cola's action violated the CBA, the Union began a strike. On March 16, 1999, Coca–Cola brought the present action under Section 301, seeking injunctive relief and damages. The district court issued a temporary restraining order ("TRO") enjoining the Union from striking and Coca–Cola from implementing the drug-testing program, pending arbitration of the Union's grievance against the program. The Union answered Coca–Cola's complaint, claimed a violation of the TRO by Coca–Cola, entered into a protective order and stipulation for discovery, and engaged in substantial discovery.

On July 13, 1999, the Union moved to compel arbitration on Coca–Cola's action for damages from the strike and to stay the legal action pending arbitration. Coca–Cola took the positions that employer grievances fell outside the CBA's arbitration provision and that, even if the provision applied, the Union had waived its right to arbitrate by failing to move earlier for arbitration and by conducting discovery and other proceedings in the district court. Coca–Cola also moved for partial summary judgment on its claim that the Union had breached the no-strike provision of the CBA. The district court denied Coca–Cola's motion for partial summary judgment and ordered the parties to arbitrate. It entered a judgment enjoining the Union from striking pending arbitration and declared that any post-arbitration proceedings would have to be the subject of a new action. This appeal followed.

## DISCUSSION

### a) Appellate Jurisdiction

■ "Interlocutory" orders directing arbitration under the FAA are not appealable as of right. *See* 9 U.S.C. § 16(b)(2). In the instant case, the district court issued a self-described "final judgment ... requiring full performance of the stipulation against striking while the arbitration remains unresolved," and noted that "[n]ecessary proceedings, if any, to enforce or vacate any future decisions of the arbitrator may be brought in a new action." *Coca–Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 99 Civ. 1949, at 5 (S.D.N.Y. Sept. 15, 1999) (unpublished memorandum & order). However, relying on law established under the FAA, the Union contends that the issue of the arbitrability of Coca–Cola's claim was "embedded" in its action for injunctive relief and damages and did not constitute an "independent" suit. From that premise, the Union asks us to hold that the district court's order directing arbitration is therefore not appealable pursuant to Section 16 of the FAA. *See Filanto, S.p.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 60 (2d Cir. 1993). However, we have jurisdiction because the FAA does not apply.

Coca–Cola's action invoked our federal question jurisdiction under Section 301.[1] Although that provision contains no substantive provisions, the Supreme Court has held that it "does more than confer jurisdiction," *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and is a source of federal "substantive law ... which the courts must fashion from the policy of our national labor laws," *id.* Coca–Cola's action is thus based on a body of federal law analytically distinct from the FAA. It may be, of course, that the body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone. *See, e.g., United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 41 n. 9, 108 S.Ct. 364, 98 L.Ed.2d

---

**1.** Section 301 states, in pertinent part, "Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

286 (1987). The FAA was passed a decade before the Wagner Act, ch. 372, 49 Stat. 449 (1935), and two decades before Taft–Hartley. Given the difference in eras and the intervening revolution in labor policy, adherence to the FAA in Section 301 cases may lead to anomalous or even bizarre results.

For example, in response to the Union's jurisdictional argument, Coca–Cola contends that the FAA does not apply in the present case because it excludes from its provisions "contracts of employment of ... workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. We have held that this exclusion is "limited to workers involved in the transportation industries" and that therefore the FAA applies to employment contracts of all workers not involved in transportation. *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir. 1997); *accord Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir.1972); *Signal–Stat Corp. v. Local 475*, 235 F.2d 298, 302 (2d Cir.1956).[2] Coca–Cola argues that this exclusion applies because the employees covered by the CBA are drivers involved in the distribution of its product.

We believe that the arguments of the Union and Coca–Cola demonstrate that the logic of *Lincoln Mills* cannot be squared with adherence to the FAA in Section 301 cases. For example, if the FAA governs in Section 301 cases, then some kinds of employee's—"transportation" workers—will be subject only to the law fashioned under Section 301 while others—all other private employees in interstate commerce (not subject to the Railway Labor Act)—will be subject to the FAA. However, *Lincoln Mills* makes little sense if the law established pursuant to it does not apply to all workers covered by the Taft–Hartley Act's definition of employee, notwithstanding the FAA.

Indeed, the tension between the FAA and *Lincoln Mills* has been evident from the beginning. In *Goodall–Sanford*, decided the same day as *Lincoln Mills*, the Supreme Court stated that cases holding an order directing arbitration under the FAA unappealable were inapposite because "[t]he right enforced here is one arising under § 301(a)." *Goodall–Sanford, Inc. v. United Textile Workers, Local 1802*, 353 U.S. 550, 551, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957). Moreover, as Justice Frankfurter suggested in his *Lincoln Mills* dissent, the Court's decision in that case—granting specific performance of an arbitration agreement—partially superseded the FAA. *See* 353 U.S. at 466–69, 77 S.Ct. 923 (Frankfurter, J., dissenting).

We acknowledge that our decision in *Signal–Stat*, 235 F.2d 298, 301, which held that the FAA applies to CBAs other than those that cover employees in the transportation industry, is inconsistent with what we hold today. However, *Signal–Stat* was decided in 1956—before *Lincoln Mills*—and neither of our two subsequent decisions reaffirming *Signal–Stat* has addressed the interplay between Section 301 of the Taft–Hartley Act and the FAA, *see Maryland Casualty*, 107 F.3d at 982; *Erving*, 468 F.2d at 1069, nor have our occasional opinions conflating claims under the two statutes, *see, e.g., ITT World Communications, Inc. v. Communications Workers*, 422 F.2d 77, 78 (2d Cir.1970) (analyzing motion for stay under Section 3 of FAA in context of Taft–Hartley Act Section 301 suit). Because our decision today overrules *Signal–Stat*, we have utilized our procedure of circulating the opinion to the active judges of the court. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991).

---

**2.** There is a circuit split on how narrowly to interpret the "contract of employment" exclusion. The Ninth Circuit recently held that the FAA must be read to exclude all employment contracts, not merely those of employees in the transportation industry, *see Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1094 (9th Cir. 1998), while acknowledging that most circuits agree with our narrower position. *See id.* at 1086 n. 6 (citing cases).

■ We therefore have jurisdiction over this appeal. Although we are not bound by a judgment's description of itself as "final," *cf. AroChem Corp.,* 176 F.3d 610, 620 (2d Cir.1999) (noting, but not relying, on district court's conclusion order was "final"), the district court has clearly stated that no further proceedings will be conducted in this matter, and the judgment is therefore final and appealable under 28 U.S.C. § 1291. *See Petereit v. S.B. Thomas, Inc.,* 63 F.3d 1169, 1175 (2d Cir. 1995).

b) *Interpretation of the CBA Arbitration Clause*

We review *de novo* the district court's decision that the dispute must be arbitrated under the terms of the CBA. *See Coca–Cola Bottling Co. v. Soft Drink & Brewery Workers Union, Local 812,* 39 F.3d 408, 410 (2d Cir.1994).

■ The arbitration clause in Article 19 of the CBA broadly states that "all complaints, disputes, controversies or grievances between the Company and its employees, or between the Union or any member of the Union and the Company" are subject to mandatory and binding arbitration "after full satisfaction of the grievance procedure." Our decision here is eased because this language resembles that in *ITT*, where we considered the application of an arbitration clause to an employer's suit against a union for violating a CBA no-strike provision. The clause in *ITT* stated:

> Any matters disputed or in disagreement, or the subject of any controversy between the parties relating to and involving the interpretation, construction, or application of the terms of this Agreement, which the parties cannot adjust satisfactorily under the Grievance Procedure, may be submitted to arbitration for final and binding determination.

*Id.* at 78–79. As here, the arbitration provisions in *ITT* were "couched in very broad terms which seem at first blush to make arbitrable [the company's] claim that the Union violated the contract." *Id.* at 79. The arbitration clause in *ITT* also contained a qualifying phrase—"which the parties cannot adjust satisfactorily under the Grievance Procedure"—much like a qualification in the Coca–Cola CBA—"after full satisfaction of the grievance procedure." In *ITT*, as here, the company argued that the arbitration clause was linked with the employee-only grievance procedure and that the clause therefore covered only employee grievances. *See id.* Likewise, the union in *ITT*, as here, claimed that the phrase was "not a limiting one, but merely describe[d] when a claim [was] ready for arbitration." *Id.* at 80. We ordered arbitration in *ITT*, based primarily on *United Steelworkers*'s direction that "[a]n order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[, resolving any doubts] in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *see ITT,* 422 F.2d at 81–82.

Coca–Cola attempts to distinguish *ITT* by arguing that recent revisions to its CBA evinced an intent to limit the previously "broad arbitration clause," *see Coca–Cola,* 39 F.3d at 409–10 (describing predecessor to the instant CBA), to cover only employee-initiated disputes. Specifically, Coca–Cola relies upon the addition of the phrase, "after full satisfaction of the grievance procedure," to the arbitration clause in Article 19 of the CBA. It argues that this addition and the contemporaneous addition of Article 44, which established an employee-oriented grievance procedure, effectively limited arbitration to complaints eligible for the grievance procedure, *i.e.,* employee grievances.

While Coca–Cola's reading of the CBA is plausible, it is not the only reasonable interpretation. For example, the insertion of "after full satisfaction of the grievance procedure" may have been intended to

clarify that employees could not bypass the newly inserted Article 44 grievance procedure and proceed directly to arbitration under the previously existing Article 19. While the impermissibility of that procedure may have been implicit absent the new limiting phrase in Article 19, it would not have been explicit, and the phrase is therefore not superfluous. Moreover, if the parties had wished to limit the arbitration clause to employee-initiated grievances, they could have done so explicitly. As the district court noted, *see Coca–Cola*, 99 Civ.1949, at 4, the CBA expressly exempts from arbitration discharge and disciplinary proceedings against employees for violating the no-strike clause, and nothing prevented Coca–Cola from negotiating for a specific exclusion applicable to the instant circumstances as well.[3] *See Drake Bakeries, Inc. v. Local 50*, 370 U.S. 254, 259, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962) ("[I]t appears ... reasonable to us to expect [a union strike in breach of contract] to have been excluded from the comprehensive language of [the CBA arbitration clause] if the parties so intended."); *ITT*, 422 F.2d at 81–82 (noting that "the parties elsewhere in the contract showed that they knew how to clearly exclude a subject from arbitration when they so desired," and holding that they ought to have done so specifically if they wished to preclude employer-initiated suits from arbitration). We cannot say "with positive assurance," therefore, that the insertion of the clause was necessarily intended to preclude employer-initiated complaints from arbitra-

tion. *United Steelworkers*, 363 U.S. at 582–83, 80 S.Ct. 1347.

### c) *Waiver*

■ Coca–Cola argues that even if the arbitration clause covers this dispute, the Union waived its right to arbitrate as a matter of law by failing for four months to press its arbitration claim and, during that time, answering Coca–Cola's complaint, claiming a violation of the TRO, entering into a protective order and stipulation for discovery, and obtaining substantial discovery. Given our caselaw, we must disagree.

■ "We have emphasized that there is a strong presumption in favor of arbitration and that waiver of the right to arbitration 'is not to be lightly inferred.'" *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir.1993) (citation omitted) (quoting *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir.1968)). "The waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules." *Cotton*, 4 F.3d at 179. "Factors to consider include (1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." *Kingston v. Latona Trucking Inc.*, 159 F.3d 80, 83 (2d Cir.1998).

Again, *ITT* is dispositive. It held that neither filing an answer nor waiting four

---

**3.** Although the grievance procedure in Article 44 appears to be an employee-oriented procedure, and Coca–Cola argues that past practices involve the arbitration of only employee-initiated grievances, the instant situation was hardly unforeseeable given the volume of cases before the Supreme Court and the circuits over the last 40 years addressing whether employer-initiated suits for damages for breach of a no-strike provision fell within an arbitration clause. *See, e.g., Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), *overruled by Boys Mkts., Inc. v. Retail Clerks Union, Local 770*, 398

U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Drake Bakeries, Inc. v. Local 50*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); *Friedrich v. Local No. 780*, 515 F.2d 225 (5th Cir.1975) (holding that arbitration is available only for employee-initiated disputes, based on arbitration clause that is far more explicit than that at issue in the instant case); *Faultless Div. v. Local Lodge No.2040*, 513 F.2d 987 (7th Cir.1975) (same); *Affiliated Food Distribs., Inc. v. Local Union No. 229*, 483 F.2d 418 (3d Cir.1973) (same); *G.T. Schjeldahl Co. v. Local Lodge 1680*, 393 F.2d 502 (1st Cir.1968) (same).

**58**

months to seek arbitration was sufficient to constitute a waiver. *See* 422 F.2d at 82–83. Moreover, those cases in which we have found a waiver have involved substantially more protracted involvement in litigation than the instant case, often with the party charged with waiver delaying until the very last opportunity or even until it has lost on the merits. *See, e.g., Kingston*, 159 F.3d at 83–84 (holding that party could not invoke right to arbitrate on eve of trial after 15–month delay, following extensive discovery that would not have been available in arbitration, including 3 depositions, 19 detailed interrogatories, and production of over 2100 pages in documents); *Cotton*, 4 F.3d at 179–80 (holding that party having failed to seek interlocutory appeal under 9 U.S.C. § 16(a)(1) from denial of motion to compel arbitration could not raise issue after actively litigating claim—including filing of motions and taking of at least two depositions—and losing on the merits); *Kramer v. Hammond*, 943 F.2d 176, 179, 180 (2d Cir.1991) (holding that party could not invoke right to arbitrate in federal district court after "protracted litigation," *i.e.*, participating in four-and-one-half year litigation of two different parallel cases in two different state courts, including litigation to highest appellate court of each); *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1576–77 (2d Cir.1991) (holding that defendants had waived arbitration claim by engaging in "protracted litigation" to plaintiffs' prejudice, *i.e.*, eighteen month delay, extensive deposition of plaintiffs, and raising issue only "in an omnibus motion for judgment on the pleadings and partial summary judgment, thereby forcing plaintiffs to litigate arbitrable issues"); *Demsey & Assocs., Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1018 (2d Cir.1972) (holding that right to arbitrate had been waived after party had "answered on the merits, asserted a cross-claim that was answered, participated in discovery, failed to move for a stay, and gone to trial on the merits").

## CONCLUSION

We have considered appellant's other arguments and find them to be without merit. We therefore affirm.