**ADIRONDACK TRANSIT LINES, INC., Plaintiff–Appellant,**

v.

**UNITED TRANSPORTATION UNION, LOCAL 1582, Defendant–Appellee.**

**Docket No. 01–7871.**

United States Court of Appeals, Second Circuit.

Argued: May 8, 2002.

Decided: Sept. 18, 2002.

Mary Helen Moses, Jordan, Bristol & Moses, Brunswick, GA, for Plaintiff–Appellant.

Daniel R. Elliott, III, Associate General Counsel, United Transportation Union, Cleveland, OH, for Defendant–Appellee.

Before: Van GRAAFEILAND, KEARSE, and B.D. PARKER, Circuit Judges.

Van GRAAFEILAND, Senior Circuit Judge.

This case, in which the amount in controversy is less than $6,000.00, once again requires us to examine the arbitration provisions of a collective bargaining agreement. We agree with Appellant employer that the language used in the collective bargaining agreement ("CBA") created a condition precedent to be satisfied before the employer had a duty to arbitrate, a condition that was not satisfied in this case. However, because we also find that "costs of cancellation" in the CBA does not include expenses incurred in preparation for arbitration, we affirm the district court's grant of summary judgment to Appellee union.

## BACKGROUND

In January 2001, Plaintiff–Appellant Adirondack Transit Lines, Inc. ("ATL" or "company"), a company that provides passenger motorcoach service primarily in upstate New York, filed suit in the United States District Court for the Northern District of New York against the union of bus drivers it employs, Defendant–Appellee United Transportation Union, Local 1582 ("UTU" or "union"). The suit alleged that UTU breached the collective bargaining agreement (to which both ATL and the union are parties) by unilaterally canceling a scheduled arbitration and refusing to pay ATL's costs in preparing for the aborted arbitration. ATL maintains that it incurred $5655.00 in attorney fees in preparation for the hearing. Complaint at para. 18.

The origins of this dispute date back to the winter of 1999–2000, when ATL refused to grant two of its bus drivers leaves of absence for the off-season. Because the union believed that ATL's refusal to grant such leave constituted a violation of the CBA, it instituted a grievance against the company in January, 2000. Article 85 of the CBA, entitled "Grievance and Time Claims," provides that:

85.01 A grievance is a dispute involving the interpretation or application of any provision of this agreement....

85.02 The primary purpose of the grievance procedure is to secure at the earliest possible step, equitable solutions to grievances.

85.03 All grievances ... shall be presented in writing by the General Chairman or Committee Chairman to the supervisor designated by the Company to handle such matters....

85.04 The designated Company supervisor will ... schedule a meeting with the union representative .... to discuss the grievance.... The Company supervisor will render a written decision....

85.05 Appeals may be taken on decisions to the highest officer of the Company or his/her representative....

85.06 The appeal hearings will be held.... A written decision on the appeal will be rendered by the Company.

\* \* \* \* \* \*

85.08 The Union shall have the right to submit grievances or claims and such submission will be recognized by the Company ....

By March of that year, ATL had denied the union relief pursuant to the grievance procedure outlined above, and the union

asserted its right to arbitration under Article 86 of the CBA that provides:

86.01(a) If the matter is submitted and carried froward [*sic*] in accordance with the foregoing procedure and it is not satisfactorily resolved, then the Union or the Company may, within thirty (30) calendar days, invoke binding arbitration by written request.

\* \* \* \* \* \*

86.01(g) The parties shall share the costs of panel arbitration equally. If one party unilaterally withdraws the arbitration, it shall bear all costs of cancellation.

\* \* \* \* \* \*

86.04 The Company and the Union shall equally share the cost and expenses of the arbitrator.

86.05 Each party will pay its own costs and expenses incurred in presenting its case.

An arbitrator was appointed to hear the union's grievance, and the hearing date was set for July 20, 2000. After the arbitrator denied UTU's request for a postponement on June 10, the union unilaterally withdrew the grievance from arbitration on July 19, the day before the hearing was scheduled to begin.

This brings us to the instant dispute. ATL's attorneys prepared for the arbitration, charging ATL $5,655 for services rendered on the grievance until UTU withdrew from arbitration. Relying on Article 86.01(g) of the CBA, ATL sought to have the union reimburse the company for these costs. The union refused to pay ATL's legal fees for preparation, disagreeing with ATL's position that Article 86.01(g) contemplated ATL's attorney fees as "costs of cancellation."

Upon the union's refusal to pay ATL's attorney fees, the company sought relief by filing suit in federal district court pursuant to Section 301(a) of the Labor Management Relations Act. *See* 29 U.S.C. § 185. In the lawsuit, ATL accused UTU of breaching Article 86.01(g) of the CBA by failing to repay ATL its preparation costs upon UTU's unilateral withdrawal.

The union responded, in a motion to dismiss or in the alternative for summary judgment, by arguing that ATL was required to first arbitrate its claim for the attorney fees as a "grievance" as that term is defined by Article 85.01 of the CBA. ATL argued below, as it does here, that the arbitration clause in the CBA is triggered exclusively by employee-initiated grievances, and, thus, ATL had no duty to submit the issue to arbitration before filing suit. The district court found that because the CBA could plausibly be read to allow the company to arbitrate a grievance that it initiated, ATL was required to arbitrate the dispute over the attorney fees. Thus, the lower court granted summary judgment to the union. This appeal followed.

## DISCUSSION

### I.

"The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment. We review *de novo* questions as to the ambiguity and meaning of the language of a contract, and as to the propriety of summary judgment." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir.2002) (citations omitted). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Moreover, here the district court's grant of summary judgment for the union served as a "decision that the dispute must be arbitrated under the terms of the CBA," which also would

call for *de novo* review. *Coca–Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Local 812,* 242 F.3d 52, 56 (2d Cir.2001). We are thus tasked with determining whether the CBA between ATL and UTU required ATL to submit the dispute to arbitration before bringing suit in federal court.

 It has long been the law that before a plaintiff may file a claim in federal court under Section 301, it first must exhaust the grievance and arbitration procedures found within the CBA to which the litigants are parties. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). "[A] duty to arbitrate a particular grievance can stem only from a contractual agreement to arbitrate, and a determination of the scope of such a contractual term is peculiarly within the purview of the judiciary." *Truck Drivers Local No. 807, I.B.T. v. Regional Imp. & Exp. Trucking Co.,* 944 F.2d 1037, 1042 (2d Cir.1991). "An order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[, resolving any doubts] in favor of coverage." *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. 1347.[1]

 ATL argues that it properly sought relief in the courts without first arbitrating

because it is not required to arbitrate the dispute. The company's position is that the arbitration clause is triggered only by employee-initiated grievances. The union, on the other hand, urges that the clause "merely describes when a claim is ready for arbitration and clarifies that employees cannot bypass the grievance procedure." Red at 11.

The union relies heavily on two of our cases in which we interpreted an arbitration clause within a CBA and held that the employer was required to arbitrate the dispute: *Coca–Cola,* 242 F.3d at 52 and *ITT World Communications, Inc. v. Communications Workers of Am.,* 422 F.2d 77 (2d Cir.1970). Both were actions by employers under Section 301 against unions for violations of no-strike clauses in a CBA. In both cases, as in the instant one, the grievance procedures were narrowly tailored to employee grievances, and the arbitration clauses referred to the grievance procedures. However, unlike this case, the arbitration clauses in *Coca–Cola* and *ITT* were sufficiently broad to encompass more than employee grievances.

In *Coca–Cola,* the arbitration clause provided that " 'all complaints, disputes, controversies or grievances between the Company and its employees, or between the Union or any member of the Union and the Company' are subject to mandatory and binding arbitration 'after full satisfaction of the grievance procedure.' " 242 F.3d at 56. Similarly, in *ITT,* the arbitration clause read:

> Any matters disputed or in disagreement, or the subject of any controversy between the parties relating to and involving the interpretation, construction, or application of the terms of this Agree-

---

[1] We are unpersuaded by ATL's argument that the rules set forth in *Republic Steel* and *Warrior & Gulf* apply only to employees (as opposed to employers) who seek redress un-

der Section 301. ATL has provided no support for, nor can we find any reasonable basis for, such a distinction.

ment, which the parties cannot adjust satisfactorily under the Grievance Procedure, may be submitted to arbitration for final and binding determination.

422 F.2d at 78–79. In both cases, the employer argued that the references to employee-oriented grievance procedures limited arbitration to disputes arising from those procedures. We disagreed, finding that these clauses could be construed to identify when a claim was ready for arbitration. *Coca–Cola*, 242 F.3d at 56–57; *ITT*, 422 F.2d at 80–81. We observed that the parties explicitly excluded certain matters from arbitration and, had the parties wished to do the same with no-strike clauses, they could have been equally specific. *Coca–Cola*, 242 F.3d at 57; *ITT*, 422 F.2d at 82. Accordingly, we could not conclude with "positive assurance" that the insertion of the clauses referencing the employee-driven grievance procedures were intended to prohibit arbitration of employer-initiated disputes. *See Coca–Cola*, 242 F.3d at 57; *ITT*, 422 F.2d at 81–82.

The union in the case at bar forcefully argues that *Coca–Cola* and *ITT* are directly on point and control. Not surprisingly, ATL argues just as emphatically that the cases are distinguishable. The district court was persuaded by the union's argument and found that "the parties' CBA can be read to allow the company to initiate arbitration on an issue arising under the contract despite the fact that the issue could not be submitted as a grievance." A–240. Because the lower court thought this interpretation a possible one, it found itself bound to conclude that arbitration was the appropriate forum.[2] We disagree.

In *ITT* and *Coca–Cola*, the language of the arbitration clauses was broad and only loosely linked to an employee-driven griev-ance procedure. The critical difference between the language in those clauses and the language employed by ATL and its union in theirs is the inclusion of a small word with large legal significance: "if." Limiting the ability to submit grievances to the union, the CBA sets out a multistep grievance procedure in Paragraphs 85.03–85.06 in which representatives of the union may present their grievances to representatives of the company. The CBA's arbitration clause, which immediately follows the grievance procedure states:

> *If* the matter is submitted in accordance with the foregoing procedure and is not satisfactorily resolved, *then* the Union or the Company may, within thirty (30) calendar days, invoke binding arbitration by written request.

A–93 (emphasis added). We agree with ATL that this language creates an express condition precedent that must be satisfied before a duty to arbitrate arises. *See* 13 Richard A. Lord, *Williston on Contracts* § 38:16 (4th ed. 2000) ("Although no particular words are necessary for the existence of a condition, such terms as 'if,' . . . or some other phrase that conditions performance usually connote an intent for a condition rather than a promise."); *see also Royal Bank of Can. v. Beneficial Fin. Leasing Corp.*, No. 87 Civ. 1056, 1992 WL 167339, at *5 (S.D.N.Y. Jun.30, 1992) (describing methods of creating condition precedent).

Contrary to the more nebulous and broad arbitration clauses we confronted in *ITT* and *Coca–Cola*, in this case we have an arbitration clause that narrowly limits arbitration to those disputes that have proceeded through the grievance procedure after filing by the union. Thus, ATL did not have a duty to arbitrate the dispute

---

**2.** We pause here to note the persuasive quality of ATL's brief is not improved by its counsel's accusations that the district court possessed a "lack of understanding of the federal common law regarding arbitration of employer grievances [that] is obvious. . . ." Blue at 23.

over the attorney fees until and unless that dispute had gone through the "foregoing procedure," that is, the employee-initiated grievance procedure. Of course, because this dispute was not initiated by an employee, it could not have gone through the grievance procedure, and therefore ATL had no duty to submit the dispute to arbitration. ATL was free to seek redress in the federal courts in the first instance for what it perceived as the union's breach of the CBA. Because the arbitration provision created a unfulfilled condition precedent, we believe the district court erred in finding that the CBA was susceptible to an interpretation which would require ATL to arbitrate. Specifically, we can say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. 1347.

## II.

■ That ATL was not required to first submit the breach claim to arbitration does not end our inquiry, however. Although we disagree with the district court's rationale for granting summary judgment to the union, we are entitled to affirm the district court on any ground for which there is support in the record, even if not adopted by the district court. *See Colautti v. Franklin*, 439 U.S. 379, 397 n. 16, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) ("Appellees, as the prevailing parties, may of course assert any ground in support of that judgment, 'whether or not that ground was relied upon or even considered by the trial court.'" (quoting *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970))); *Viacom Int'l, Inc. v. Icahn,* 946 F.2d 998, 1000 (2d Cir.1991).[3]

■ At its core, this dispute is about whether ATL is entitled to recover from the union its costs of preparing for an arbitration that the union unilaterally canceled at the last minute. ATL relies on Article 86.01(g) of the CBA, which states: "The parties shall share the costs of panel arbitration equally. If one party unilaterally withdraws the arbitration, it shall bear all costs of cancellation." At oral argument we learned that the arbitrator customarily charges a fee for cancellation. The company argues that "costs of cancellation" encompasses costs of preparation, including attorney fees. In support of its position, ATL contends that Article 86.01(g) was added to the latest version of the CBA to discourage the union from continuing its practice of unilaterally withdrawing from arbitrations in the eleventh hour at significant expense (including preparation expense) to ATL.

ATL's position is undermined, however, by the presence of Article 86.05 in the CBA which unambiguously states that "[e]ach party will pay its own costs and expenses incurred in presenting its case." "[E]xpenses incurred in presenting its case" must include preparation expenses. Looking at the agreement as a whole, therefore, it is obvious that Article 86.01(g) deals only with the fees for the arbitrators and those directly associated with the arbitration process, and not with a party's preparation expenses.[4] UTU did pay the arbitrator upon the cancellation. That is all the CBA required. UTU did not breach the CBA, and ATL's attorney's fees are its own responsibility.

## CONCLUSION

The district court erred in finding that ATL was required to arbitrate its dispute

---

3. The parties argued the issue discussed in this section in the court below and on appeal.

We are therefore plainly entitled to affirm on this ground.

4. ATL contends that, under this interpreta-

with the bus drivers' union over its attorneys' preparation fees. The arbitration clause in this case contains an unfulfilled condition precedent to ATL's duty to arbitrate. However, because we hold that under the CBA "costs of cancellation" does not include costs of preparation, ATL could not prevail on its underlying claim for breach of the CBA. As a result, summary judgment for UTU is appropriate.

AFFIRMED.

tion, the first sentence of Art. 86.01(g) would be redundant because of Art. 86.04, which states that the parties "shall equally share the cost and expenses of the arbitrator." Blue at 30. However, ATL does not explain how its interpretation of Art. 86.01(g)'s first sentence is any different than UTU's interpretation. In fact, the provision appears to be redundant even under ATL's interpretation, as ATL distinguishes between "costs of panel arbitration" and "costs of cancellation." Blue at 32–34, Gray at 12.

ATL also contends that the union's interpretation renders the second sentence of Art. 86.01(g) invalid because, before Art. 86.01(g) was negotiated, the "Union was already obligated to pay the entire arbitrator's fee when it unilaterally withdrew from arbitration." Blue at 30. However, this provision previously had not been codified in the CBA. Given the union's purported practice of unilateral withdrawal, it is a reasonable assumption that ATL would have wanted the payment obligation memorialized.