Thelma YOUNG, Plaintiff–Appellant,

v.

WESTCHESTER COUNTY DEPART-MENT OF SOCIAL SERVICES and Judy Hagen, Defendants–Appellees.

No. 02–7706.

United States Court of Appeals, Second Circuit.

Feb. 3, 2003.

the County of Westchester, White Plains, New York, for Defendants–Appellees Westchester County Department of Social Services and Judy Hagen, of counsel.

PRESENT: NEWMAN; KATZMANN, and RAGGI, Circuit Judges.

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 3rd day of February, two thousand three.

UPON DUE CONSIDERATION of this appeal from the United States District Court for the Southern District of New York (Brieant, Charles L., *J.*), it is hereby

ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.

In this appeal, the Plaintiff, Thelma Young, challenges the decision of the District Court granting the motion of the Defendants, Westchester County Department of Social Services ("the County") and Judy Hagen, for summary judgment, as to all of Young's claims. We will affirm, but for reasons somewhat different than those given by the District Court. *See Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 88 (2d Cir.2002) (holding that court may affirm on any basis supported by the record on ap-

_____

Michael H. Sussman, Law Offices of Michael H. Sussman, Goshen, New York, for Plaintiff–Appellant Thelma Young.

Mary Lynn Nicolas, Senior Assistant County Attorney (Stacey Dolgin–Kmetz, Chief Deputy County Attorney,) for Charlene M. Indelicato, County Attorney for

peal). We review the District Court's decision to grant summary judgment de novo. *See Rogers v. City of Amsterdam,* 303 F.3d 155, 158 (2d Cir.2002).

## A. Reasonable Accommodations

Claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., follow the familiar path of *McDonnell Douglas* burden-shifting. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 49, 54 (2d Cir.2002). "For a plaintiff who can perform a desired position with a reasonable accommodation to establish a prima facie case of discrimination because of disability, she must show '(1) that [s]he is an individual who has a disability within the meaning of the [ADA], (2) that an employer covered by the statute had notice of h[er] disability, (3) that with reasonable accommodation, [s]he could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations.'" *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 216 (2d Cir.2001) (quoting *Stone v. City of Mt. Vernon,* 118 F.3d 92, 96–97 (2d Cir.1997)) (alterations in original).

▮ Young's reasonable accommodation claim fails before even reaching the "essential functions" question, because she provides no evidence that the County knew she had a disability at the time it took the alleged adverse actions. A defendant cannot be liable under the ADA unless it had information at the time of its pertinent decisions that would have permitted a reasonable employer to conclude that the plaintiff was, in fact, disabled. *See Bartlett v. N.Y. State Bd. of Law Examiners,* 226 F.3d 69, 85–86 (2d Cir.2000) (citing *Heilweil v. Mt. Sinai Hosp.,* 32 F.3d 718, 725 (2d Cir.1994)); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 932–33 (7th Cir.1995). The County knew, as early as April of 1998, that Young had trouble breathing and speaking. Both Young's doctors and the County's doctor, however, emphasized that these problems were temporary, and repeatedly projected that Young would be able to return to work shortly. A key aspect of a "disability" under the ADA is that it is "'permanent or long-term.'" *RECAP,* 294 F.3d at 46–48 (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002)). Thus, the County had every reason to believe that Young was simply suffering from a short-term injury or illness, not a "disability."

The County therefore was not on notice that it was obligated to comply with the ADA's requirements. We see little sense in holding a defendant liable for failing to do what it had no reason to know was required. At the same time, we agree that "some symptoms are so obviously manifestations of an underlying disability that it would be reasonable to infer that an employer actually knew of the disability." *Hedberg,* 47 F.3d at 934.

Young, however, does not fall under this exception. She asked only to return to work, subject to "light duty," or to transfer because of "perfumes." Her symptoms could have been explained as easily by a sinus or tonsil infection as by some ongoing long-term ailment, particularly considering her doctors' continual assurances that she could soon return to work. The first indication the County had that Young might have a "disability" was on June 16, 1999, when she submitted the diagnosis of "severe chronic obstructive pulmonary disease and obstructive airway disease." Therefore, her claims based on any of the Defendants' actions prior to that date must be rejected. *See Heilweil,* 32 F.3d at 725 (holding that discovery of plaintiff's serious sinus condition subsequent to employer's

challenged decisions was not probative of whether she was a "handicapped person" under the relevant statute).

Young offers no evidence that the County failed reasonably to accommodate her after June 16, 1999. By that time, she had returned to work. Although she was not transferred until November 3, 1999, there is no evidence in the record that there was an open position available between June and November. Accordingly, we agree with the district court that summary judgment was appropriate on Young's reasonable accommodation claims.

## B. ADA Retaliation

In order to establish a prima facie case of retaliation under the ADA, a plaintiff must "show 'that it was engaged in protected activity, that the defendant was aware of this activity, that defendant took adverse action against the plaintiff, and a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" *RE-CAP*, 294 F.3d at 54 (quoting *Sands v. Runyon*, 28 F.3d 1323, 1331 (2d Cir.1994) (internal alterations omitted)). The District Court granted summary judgment on Young's ADA retaliation claims, holding that the retaliatory conduct she alleged was not covered under the statute because it was not "materially adverse." We will again affirm on a slightly different basis, here, that no reasonable juror could have found a causal relationship between Young's protected activities and any non-trivial adverse actions directed against her.*

■ Young has not submitted any evidence to suggest that there is a causal

relationship between her requests to return to work, or to transfer, and the disciplinary measures and delayed transfers to which she alleges she was subjected. Ordinarily, causality can be inferred from the fact that " 'the protected activity was closely followed in time by the adverse action.' " *Lovejoy–Wilson*, 263 F.3d at 224 (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001)). However, where the adverse action was already ongoing at the time of the protected activity, or is very similar to another adverse action that was taken before the protected activity, with no other change in relevant circumstances, logic precludes any inference of causation. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir.2001). Young had already had a transfer request pending since March of 1997 at the time she requested her accommodations. Absent evidence that suitable positions were unavailable during that period, but available during late 1998 and 1999, it is hard to see how any failure to transfer Young could have been related to her protected activities. Similarly, the disciplinary proceedings Young complains of all began well before she began to ask to return to work. In any event, Young maintained that the main perpetrator, her supervisor, Hagen, had harassed her "from the very beginning," more than a year before Young left work. When asked whether she attributed the hostility she perceived at her workplace "to the A.D.A.," Young replied, "No, that was going on for quite a while." Young offers no evidence, other than relative nearness in time, to link the allegedly adverse actions to her protected activities. Under these circumstances, we conclude, there is no reasonable inference that the two sets of events were causally related.

---

\* Because we conclude that Young cannot demonstrate a causal relationship between her protected activities and the actions allegedly directed against her, we need not reach the question of materiality today.

### C. Other Claims

We have considered Young's remaining claims, and found them to be without merit. We see nothing whatsoever in the record to support an inference that any of Young's treatment was based upon her race. *See, e.g., Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir.2002) (refusing to consider facially neutral employment incidents without "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory"). Although some white employees did manage to move between County offices, so, too, did some African–American candidates. Finally, we agree with the District Court that, in light of Young's failure to request leave to serve a late notice of claim, the New York state law claims were properly dismissed. *See Mills v. Monroe County,* 59 N.Y.2d 307, 312, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983).

### Conclusion

For the reasons stated above, the judgment of the District Court is hereby Affirmed.