12-0402-cv
NFL Players Ass'n v. NFL Mgmt. Council

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS
GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE
PROCEDURE 32.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS
COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC
DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY
ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second Circuit, held
at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of
New York, on the 19th day of April, two thousand thirteen.

Present:     SUSAN L. CARNEY,
             CHRISTOPHER F. DRONEY,
                     *Circuit Judges*,
             PAUL G. GARDEPHE,
                     *District Judge*.*

---

|   |   |
|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on behalf of Steve Harvey, David Alexander, Marlon Kerner, Charles Smith, Dusty Renfro, Michael Swift, and Jason Peter, | |
| *Petitioner-Appellee,* | |
| v. | No. 12-0402-cv |
| NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL, on behalf of The Buffalo Bills, The New York Jets, and The Carolina Panthers, | |
| *Respondent-Appellant,* | |
| THE NEW YORK JETS, THE CAROLINA PANTHERS, | |

---

 * The Honorable Paul G. Gardephe, United States District Judge for the Southern District of
New York, sitting by designation.

and THE BUFFALO BILLS,

Respondents.**

<hr>

Appearing for Appellant:      REX S. HEINKE (L. Rachel Lerman, *on the brief*), Akin Gump Strauss Hauer & Feld LLP, Los Angeles, CA (Daniel L. Nash, Stacey Eisenstein, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, *on the brief*).

Appearing for Appellee:      JEFFREY L. KESSLER (David G. Feher, Adam J. Kaiser, Jeffrey H. Newhouse, *on the brief*), Winston & Strawn LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*).

**UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the January 3, 2012 Order of the district court be and it hereby is **VACATED** and the cause remanded for further proceedings consistent with this Order.

Respondent National Football League Management Council (the "Management Council" or "Management") appeals from an order of the district court that addressed the terms of an injunction it had earlier issued.[1] Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council, No. 08 Civ. 3658, 2011 WL 1137334, at *2 (S.D.N.Y. Mar. 25, 2011). The Management Council is the exclusive bargaining representative of the thirty-two National Football League

<hr>

** The Clerk of the Court is directed to amend the official caption to conform to the caption shown above.

[1] The order also declined to hold Management in contempt for violating the earlier-entered injunction. Neither party appeals the district court's ruling on this question.

2

Clubs (the "Clubs"). The National Football League Players Association (the "Players" or the "NFLPA") is the exclusive bargaining representative of National Football League players and the party at whose instance the injunction was issued. We assume the parties' familiarity with the facts and record of the prior proceedings, to which we refer only as necessary to explain our decision.

The NFLPA and the Management Council are parties to a collective bargaining agreement ("CBA") that incorporates a standard Player's Contract (the "Player's Contract") between a player and his Club. Together, these agreements provide that when a player suffers a football-related injury that prevents him from playing, his Club must protect him in two ways. First, it must pay him his full salary for the remainder of the season in which he is injured. Second, if the player remains unable to play at the beginning of the following season, the Club may terminate his contract, but it must pay him a limited salary for that season.

Like other injured workers, injured players are entitled to seek benefits from state workers' compensation funds. Paragraph 10 of the Player's Contract addresses a Club's rights when one of its players is entitled to receive both state workers' compensation *and* salary.[2] Under such circumstances, Paragraph 10 authorizes the Club to deduct the player's workers' compensation award from the amount it owes him in salary. The Management Council and the Players agree that

---

[2] Paragraph 10 provides in full: "Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation." App. 37.

this rule — which they refer to as the "offset" — is designed to preclude players from "double-dipping" by concurrently receiving workers' compensation payments and salary.

The Players and Management disagree, however, about the amount of the offset that Paragraph 10 authorizes. The Players argue that the Clubs are entitled to collect only those state workers' compensation payments an injured player receives *while the Club is paying him salary under the terms of the Player's Contract*. The parties refer to this as a "time" offset. Management argues, in contrast, that a Club is entitled to collect an injured player's workers' compensation payments *until such time as the Club has recouped the total amount of salary it paid the player while he was injured*, even if, while those additional worker's compensation payments are being made by the state, the player is no longer under contract to the Club and no longer receives a salary from the Club. The parties refer to this as a "dollar-for-dollar" offset.

In 2005, pursuant to the dispute-settlement mechanism established by the CBA, the Players brought an arbitration proceeding in New York seeking a declaration that Paragraph 10 mandates a time offset. Two years later, after extensive proceedings, Arbitrator Shyam Das issued an award in favor of the Players. He summarized his findings as follows: "Paragraph 10 of the NFL Player Contract provides only for a time offset, and not for a dollar-for-dollar offset . . . . [T]his is the law of the shop under this CBA and is binding on all the

4

Clubs." App. 63.[3]  Arbitrator Das recognized "a separate issue . . . as to whether Paragraph 10 limits the right of a state to provide a greater offset in determining what workers' compensation benefits a player is entitled to under state law," App. 61 — that is, whether Paragraph 10 preempts state workers' compensation laws. Arbitrator Das found that this preemption question was "a mat[t]er to be decided in the appropriate state or federal forum, not arbitration under the CBA." App. 62.

Soon after the arbitrator issued his award, the Players filed a petition in the district court to confirm the award.  The district court granted that petition on March 29, 2009.

After the district court confirmed the award, the Clubs — acting individually and not through the Management Council — continued to seek dollar-for-dollar offsets in various state workers' compensation tribunals and courts.  Spurred by the Clubs' actions, the Players returned to the district court requesting injunctive relief. They argued that, by making the dollar-for-dollar arguments in state fora, the Clubs were violating the arbitration award that the district court had confirmed.

In response, on March 25, 2011, the district court issued an Order granting injunctive relief to the Players.  The court framed its injunction as follows: "Management is hereby enjoined from attempting to assert dollar-for-dollar offsets under Paragraph 10 of the CBA."  Nat'l Football League Players Ass'n, 2011 WL 1137334, at *2 (the "2011 Order").

_____

[3]  Arbitrator Das's ruling was consistent with a long line of arbitration decisions construing Paragraph 10.  These earlier decision had been issued in connection with disputes between individual players and individual Clubs.  See App. 49 (listing arbitration decisions dating from 1990).

5

That did not end the matter. After several Clubs continued to seek dollar-for-dollar offsets, ostensibly (as described by Management in at least one case) "under New York state law in New York workers' compensation courts, *but not under Paragraph 10*," Appellant's Br. at 14 (emphasis added), the Players moved the district court to hold Management in contempt.

In an opinion dated January 3, 2012, the district court denied the contempt motion. At the same time, it "clarifie[d] the Order's meaning," declaring that "[i]n addition to providing for a time offset, Paragraph 10 of the Player's Contract preempts any state law to the contrary." Order at 3, Nat'l Football League Players Ass'n, No. 08 Civ. 3658 (PAC) (S.D.N.Y. Jan. 3, 2012), ECF No. 62 (the "2012 Order").

The Management Council now challenges the district court's 2012 Order on two grounds. First, Management contends that because Arbitrator Das expressly declined to address whether Paragraph 10 preempts state laws providing for dollar-for-dollar offsets, the district court was not authorized to resolve the preemption issue in proceedings to enforce the arbitration award. Second, Management argues that even if the district court had the authority to reach the preemption question, its analysis was incorrect.

We agree with Management that, given the procedural posture of the case before it, the district court lacked the authority to reach the preemption question. Accordingly, we vacate the 2012 Order. We do not consider the merits of the district court's preemption analysis, however, and our decision is without prejudice to future adjudication of the preemption question through a separate action.

6

Preliminarily, we consider two procedural challenges to Management's appeal. First, the Players argue that the appeal is untimely because it was not filed within thirty days of the district court's entry of the 2011 Order, which first provided injunctive relief. See Fed. R. App. P. 4(a)(1)(A). As the district court recognized, however, the injunction contained an important ambiguity regarding its scope and effect in state court. This aspect remained muddy until the court's 2012 Order. The district court's clarification in the 2012 Order was sufficiently material that we consider it to have reset Management's time to appeal, and Management timely proceeded thereafter. See Priestley v. Headminder, Inc., 647 F.3d 497, 502 (2d Cir. 2011).

Second, the Players argue that Management cannot appeal from the 2012 Order because Management *prevailed* in the contempt proceeding. We reject this position, too, because the court's 2012 order "substantially change[d] the terms and force of the injunction." Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 141–42 (2d Cir. 2005) (internal quotation marks omitted). It would elevate form over substance to preclude Management from appealing an order that was clearly — and newly — adverse to its interests. We therefore reject the Players' procedural challenges and turn to considering whether the district court properly addressed the preemptive effect of Paragraph 10.

The Players brought their petition to confirm the arbitration award under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Section 301 gives district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting

7

commerce as defined in this chapter, or between any such labor organizations." Id. This provision, we have explained, "does more than confer jurisdiction": it "is a source of federal substantive law which the courts must fashion from the policy of our national labor laws." Coca-Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union Local 812, 242 F.3d 52, 54 (2d Cir. 2001) (internal quotation marks and alteration omitted). Section 301 does not articulate the substantive or procedural rules of the enforcement regime that it contemplates, however. Accordingly, courts have in the past turned to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, for guidance about arbitration enforcement conducted under section 301. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 40 n.9 (1987); Coca-Cola, 242 F.3d at 54.

The FAA limits a district court's authority when reviewing an arbitration award. To vacate an arbitral award, for instance, a district court must find that the award "falls within a very narrow set of circumstances," all of which "involve corruption, fraud, or some other impropriety on the part of the arbitrators." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) (internal quotation marks omitted); see 9 U.S.C. § 10(a). Because the FAA requires district courts to accord significant deference to arbitrators' decisions, the "showing required to avoid summary confirmation of an arbitration award is high." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997).

We have held that actions to confirm such awards are "straightforward proceedings in which no other claims are to be adjudicated." Ottley v.

8

Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987). To be sure, once a court has confirmed an award, it has plenary authority "over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees," including by exercising authority over proceedings to enforce the judgment. Zeiler v. Deitsch, 500 F.3d 157, 170 (2d Cir. 2007). But this enforcement power does not extend beyond the scope of the arbitration award: "the judgment to be enforced encompasses the terms of the confirmed arbitration award[ ] and may not enlarge upon those terms." Id.

Here, when the district court held that Paragraph 10 preempted contrary state law, it in effect expanded the terms of the arbitration award. Arbitrator Das had expressly (and properly) declined to resolve this question, and the district court's preemption ruling, while not unrelated to the underlying arbitration, was not "necessary to vindicate [the district court's] authority, and effectuate its decree[ ]." Id. We therefore must vacate the district court's 2012 Order regarding the preemptive effect of the arbitration award on state law.

In the award that the district court confirmed, the arbitrator determined that "Paragraph 10 of the NFL Player Contract provides only for a time offset" and that "this is the law of the shop under this CBA and is binding on all the Clubs." App. 64. As Management acknowledged at oral argument, the NFLPA is free to bring a separate action for a declaratory judgment that, under federal labor law, Paragraph 10 preempts contrary state laws.[4]

---

[4] Although we vacate the district court's 2012 Order, our decision does not disturb the district court's 2011 Order. In that vein, we reject Management's argument that, in its orders enforcing the award, the district court could enter an injunction binding only those Clubs that were

9

Accordingly, the January 3, 2012 order is **VACATED**, and the cause is

**REMANDED** for further proceedings consistent with this opinion.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

parties to the arbitration. The Players and Management agreed, and Arbitrator Das concluded, that because the Management Council was the Clubs' bargaining representative, all Clubs would be bound by the arbitration.