**Stephen LOMASCOLO, Plaintiff**

**v.**

**OTTO OLDSMOBILE–CADILLAC, INC., Defendant.**

**No. CIV.02–CV–0231(LEKRFT).**

United States District Court, N.D. New York.

March 17, 2003.

Richard P. Walsh, Jr., Lombardi, Reinhard Law Firm, Albany, NY, for plaintiffs.

Heather D. Diddel, Whiteman, Osterman Law Firm, Albany, NY, Jeffrey N. Miller, Friedman, Hirschen Law Firm, Schenectady, NY, for defendant.

## MEMORANDUM DECISION AND ORDER

TREECE, United States Magistrate Judge.

By a letter dated February 27, 2003, the Defendant moved for a protective order

precluding the Plaintiff from using two written documents, dated February 19, 2001 and March 23, 2001, respectively, because the Plaintiff failed to disclose these two documents prior to the deposition of one of the Defendant's representatives. The Plaintiff responded to the Defendant's letter by a letter-memorandum dated March 10, 2003, with exhibits, wherein the Plaintiff provided his explanation why he did not previously disclose these two letters and also asserted arguments against the order of protection.

The Court held a telephone conference on March 12, 2003, with counsel for the respective parties. After hearing from both sides, the Court reserved decision.

## BACKGROUND

This is a sexual harassment and hostile working environment case pursuant to Title VII, 42 U.S.C. § 2000–e, *et seq.*, and New York State Human Rights Law, under Article 15 of N.Y. Exec. Law § 292, *et. seq.* The Plaintiff alleges that he was subject to sexual harassment and a hostile working environment due to the severe and pervasive actions perpetrated towards him and sexual stereotyping by repeatedly intimating that he was "gay" and/or "effeminate." Docket no. 1 (Compl.)

At the deposition of Heidi Otto, the daughter of the Defendant-owner, held on February 26, 2003, Ms. Otto was confronted by Plaintiff's counsel with two written documents that had not been previously disclosed to the Defendant. Ms. Otto's signature appears on both documents.

The first document, dated February 19, 2001, states, in sum and substance, that it is a record documenting that the Plaintiff asked Steve LeMon to stop making explicit and offensive comments of a sexual, stereotypical nature and from further implying that the Plaintiff was gay. The document continues to state that if Plaintiff is sub-

jected to "one more unwanted comment by [LeMon], [Plaintiff] would take whatever action was allowed [him] under company policy and New York State and Federal Laws to end this harassment." It is signed by the Plaintiff and directly underneath his signature are three "witnesses" who signed as well, one of them being Ms. Otto. Plaintiff represents that Otto signed only as a witness to his signature.

The second document is a handwritten note dated March 23, 2001, and it too is signed by the Plaintiff and Ms. Otto. Therein, the Plaintiff states, in essence, that he told Mike Pendergast, his immediate supervisor and General Sales Manager, he wanted all gay and homosexual remarks and jokes to stop immediately. The note continues to provide further details on his and Pendergast's discussion on this matter. The purpose of Ms. Otto's signature on this document is vague, but, in all likelihood, was probably to indicate that she witnessed his signature.

At this deposition, and prior to these two documents being marked as exhibits, Plaintiff questioned Ms. Otto, *inter alia,* whether Plaintiff complained to her about all of the derogatory comments and unrelenting harassment. She acknowledged some of those complaints, though she states that she does not recall the specifics of the complaints or that he complained to other supervisors about being called gay or effeminate. Furthermore, she did not view these acts and comments to be sexual harassment. Pl. It. dated March 10, 2003, Ex. C, pgs. 30–47 (Otto's deposition). Just prior to a ten minute break in the deposition, Plaintiff was exploring with Otto whether she had spoken to Tony Mangio about this matter, and, if so, when. *Id.*

When they returned from the break, the Plaintiff asked Ms. Otto to identify one of

the documents in issue, which she did. Plaintiff then began to explore with her the contents of this document. At this point, there was an interruption in the examination of Otto by a colloquy between the attorneys about why this document was not disclosed earlier in the litigation. After more inquiries on the first document, the second document was introduced into the record. At this moment, another break was taken and when Ms. Otto and her attorney returned, the deposition was abruptly concluded. *Id.* at 47–62. On February 27, 2003, Defendant made this application for a protective order.

Defendant claims that Plaintiff should have disclosed both of these documents prior to the February 26, 2003. The Defendant's argument is essentially twofold. First, it should have been disclosed as a part of the FED. R. CIV. P. 26(a) required initial disclosure. Second, Defendant sought by a Demand For Production of Documents dated May 6, 2002, *inter alia*, a copy of any statement of Defendant concerning the issues of this case. Defendant asserts that both of these documents are Ms. Otto's statements and should have been disclosed in response to Defendant's Demand to Produce.

Plaintiff contends that he does not have to disclose these documents pursuant to the Defendant's Demand, because they are not statements of Ms. Otto. Rather, Plaintiff asserts they are his statements and all Otto did was witness him affixing his signature to them, and then signing them herself. As to the Rule 26(a) mandatory disclosure, Plaintiff maintains that these two documents are specifically excluded from this rule's full and mandatory disclosure. In defense of his actions and in support of his opposition to this Motion for Protective Order, he asserts that these two documents are "solely for impeachment purpose." Rule 26(a)(1)(B) reads, in part: "a party must, without awaiting a discovery request, provide to the [other party] ... a copy of ... all documents ... that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, **unless solely for impeachment.**" (emphasis added).[1]

## DISCUSSION

Pursuant to FED. R. CIV. P. 72(a), a magistrate judge may issue orders regarding nondispositive matters. Pretrial discovery questions are generally considered to be nondispositive and thus, any order in this regard is subject to the "clearly erroneous or contrary to law" standard. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990); *J.G. Peta, Inc v. Club Protection Inc*, 2001 WL 536280, 2001 U.S. Dist. Lexis 6563 (N.D.N.Y. May 18, 2001) (McCurn, J.) (citations omitted). A magistrate judge has broad discretion in resolving nondispositive matters and thus is entitled to substantial deference in deciding discovery disputes. *J.G. Peta Inc, supra.; Moss v. Enlarged City School District of the City of Amsterdam*, 166 F.Supp.2d 668 (N.D.N.Y. July 3, 2001). Indeed, in exercising broad discretion in resolving discovery disputes, a magistrate judge can im-

---

1. Plaintiff also argues that at the time the Defendant served its Demand for Production of Documents, it, in effect, obviated the need for the Plaintiff to comply with the mandatory requirements of Rule 26(a). This is not a correct proposition of law or a reasonable assumption. It is clear that the only way a party may be exempted from compliance with Rule 26(a) is either by stipulation of the parties or court order. FED. R. CIV. P. 26(a)(1). A demand for discovery, such as here, is not, and does not, assume the characteristic of stipulation. Furthermore, there has not been an order issued waiving Plaintiff's obligations to comply with this rule.

pose a protective order and/or sanctions regarding any failure to make a disclosure or cooperate in the discovery process which may be appropriate under the circumstances. FED. R. CIV. P. 37(c)(1).

The Defendant seeks complete preclusion of both of these documents at trial for failure to comply with Rule 26(a) mandatory disclosure and its Demand for Production. Commencing our analysis with the failure to respond appropriately to the Demand for Defendant's Statements, the Court has carefully reviewed these documents and notes that clearly they are not statements of Ms. Otto. Apparently, she signed both only as a witness. Therefore, the Plaintiff cannot be faulted for not sharing these documents consistent with this particular Demand.

Plaintiff strongly asserts that he did not have to disclose these documents pursuant to Rule 26(a)(1)(B), and that they were withheld because they are to be used "solely for impeachment purposes." The Court does not disagree to the extent that impeachment information is excluded from the initial mandatory disclosure. FED. R. CIV. P. 26, advisory comm. notes 2000. Since Mr. Pendergast at his deposition denied any meeting with the Plaintiff about his complaints of offensive and derogatory sexual comments, Plaintiff intended on using these documents at the next series of depositions, purportedly as impeachment. Pl. It. dated March 10, 2003. It appears Ms. Otto was the first Defendant representative to be confronted with these documents.

Further, Plaintiff contends that the Defendants should not be surprised or feel prejudiced by the facts revealed in these two documents because the same facts were shared with the Defendant in Plaintiff's answer to Defendant's interrogatories. Answers to the interrogatories do indeed provide details of the same alleged sexual harassment set forth in these documents, but there is no mention of the existence of these documents. Pl. It. dated March 10, 2003, Ex. A. To the contrary, Defendant does feel aggrieved and prejudiced contending that Plaintiff attempted to use these documents to surprise and ambush Ms. Otto.

The Court has reviewed the transcript of Ms. Otto's deposition and it is not evidently clear that Ms. Otto stated anything which may be deemed materially inconsistent with the contents of these documents, prior to, or at the time of their introduction. Possibly, her answers that she does not recall the specifics of the Plaintiff's complaints that he shared with her could be the basis of the inconsistency. Ex. B, Otto's dep., pgs. 26–30. Or perhaps, Otto not recalling the specifics about the LeMon confrontation or the Plaintiff reporting to Pendergast, could also be the basis for inconsistency. *Id.* at 34. To the extent pursued by the Plaintiff at this deposition, there was no direct confrontation with Otto that she had made any statements inconsistent with any of her other previous statements. Rather, Otto was only asked whether these documents refreshed her recollection. In some context, refreshing a witness's recollection may be considered impeachment, but in most instances, it is not. It would depend upon the weight of the refreshment of recollection and the degree to which it is employed. Ms. Otto at her deposition stated that she did not recall Lomasclo complaining to her about the "gay" or "effeminate" comments about him. The documents presented to her at the deposition, which she signed as a witness, are replete with references to complaints about gay comments and jokes, many of them directed at the Plaintiff. Maybe in this regard, she has been impeached.

Impeachment evidence, at least as to this Court, is offered to discredit a witness and to reduce the effectiveness of the witness's testimony by bringing forth evidence which explains why the trier of fact should not put faith in the witness or the witness's testimony. Nonetheless, we should remember that the Plaintiff makes this contention to not only withhold the document until an opportune time to use as impeachment but in an effort to defeat the imposition of sanctions, especially complete preclusion.

In order to determine if sanctions pursuant to FED. R. CIV. P. 37(c)(1) may be imposed, it is necessary for the Court to first determine the character of these documents. Notwithstanding Plaintiff's characterization, the Court finds that these documents may have a dual purpose: (1) for impeachment purpose; and (2) as substantial proof to support his claim. When the Court mentioned the latter aspect to the parties during the telephone conference, Plaintiff felt, because the documents are now out in the open, that it could be used for more than impeachment; that it could be used in his case in chief. Under these circumstances, it appears that the Plaintiff wishes to now utilize these documents as both a shield and a sword.

Next, the Court must determine that if these documents have dual purposes, both impeachment and substantive, and were not disclosed pursuant to Rule 26(a), can they be completely, or partially, precluded. In this regard the Court turned to both cases and statute for instruction. Unfortunately, we were not able to find a Second Circuit case on point, but other Circuits have discussed this issue.

The First Circuit Court of Appeals has carved out a hard and fast rule on documents that have a dual functionality, as in this case, and disclosure. In *Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir.1998), an expert witness was confronted and impeached at trial by letters that had not been previously disclosed. The impeaching party asserted that the letters were solely for impeachment purposes. But the Court found that these letters were at least, in part, substantive, and therefore they did not fall within the "**solely** for impeachment" exception of FED. R. CIV. P. 26(a)(3). (emphasis added). *Id.* at 270. For the Circuit Court, the letter excerpts constituted substantive evidence because, separate and apart from whether they contradicted the expert's testimony, they tended "to establish the truth of a matter to be determined by the trier of fact (citing *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 518 (5th Cir.1993))." *Id.* Because of the substantive content, this Circuit Court held that the District Court erred, as a matter of law, in finding the letter excerpts to fall within the exception to the discovery rules for evidence introduced "solely for impeachment purposes" of FED. R. CIV. P. 26(a)(3). *Id.* at 272–3. The First Circuit then concluded that it would not countenance ambushes at trial and that this dual purpose document should have been disclosed. The Court, therefore, ruled that the document should have been completely precluded at trial. *Id.* at 276.

Other jurisdictions are not so quick to embrace *Klonoski*. The District Court in *Halbasch v. Med–Data, Inc.*, 192 F.R.D. 641 (D.Or. May 2000), in conducting its analysis of disclosure of a document asserted to be for impeachment purpose but also having a substantive purpose, surveyed other Circuits and found various interpretations and inexorably different results. Because of the lack of consensus among the Circuits, and more so due to no controlling Ninth Circuit authority where the Court sat, this District Court was unwilling to apply *Klonoski* to the facts con-

founding it. *Id.* at 649. Further, the Court was confused whether "solely for impeachment purpose" applied to the use subjectively intended by the offering party, or instead, to any possible use that may later be ascertained by the opposing party or a court. *Id.* Thus, it decided not to preclude the use of the document. *Id.* at 650.

Because of the uncertainty within the Circuits, the lack of any precedent in the Second Circuit, and *Klonoski*'s rigid application to these dual purpose documents remaining unpersuasive, this Court too will not follow the ruling of *Klonoski.*

The crux of the issue before this Court is this: Plaintiff has made certain representations to the Court in order to prevent the imposition of sanctions, that is, he acted in good faith in not disclosing these documents because he intends to use them "solely for impeachment purposes." In this regard, Plaintiff may be successful in defeating a protective order granting complete preclusion or the imposition of attorney fees or cost or monetary sanctions.

This Court has broad latitude in managing discovery and may render a decision that may, and can, impact the introduction of evidence at trial. If this Court could grant the motion for preclusion of these documents for all purposes, which would have an impact upon the trial, it should also be able to preclude for a limited purpose.[2] Indeed, the Court may impose other appropriate sanctions. FED. R. CIV. P. 37(c)(1).

When a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position in the same proceeding, especially if it is to the prejudice of his adversary. *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). This is called the doctrine of judicial estoppel and it precludes a party that successfully maintained a particular position in one legal proceeding, from assuming a contrary position in a later proceeding solely because of a change in interest or circumstances or necessity. Put another way, this doctrine generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *Mulvaney Mechanical, Inc. v. Sheet Metal Workers,* 288 F.3d 491, 504 (2d Cir.2002); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

In this matter, Plaintiff has successfully interposed an argument that created an advantage in escaping draconian sanctions. However, as previously pointed out, these documents could possibly establish that he complained to his employer of the alleged discriminatory conduct, putting the Defendant on notice that it may have to do something to stop such illegal conduct.

---

**2.** United States Magistrate Judge for the Eastern District of New York performed a different analysis when confronted with whether the lack of disclosure of evidence identified for the sole purpose of impeachment and its future role at the trial should be ruled upon promptly by him or reserved until trial. Magistrate Judge Wall assumed that the evidence would be limited to impeachment at trial, however submitted that "the ultimate determination of that issue [,] will ... be made by the trial judge." *McGrath v. Nassau Health Care Corp.,* 209 F.R.D. 55, 64 (E.D.N.Y.2002). Judge Wall felt that FED. R. CIV. P. 37(c) left him with very limited options in this regard. This Court disagrees as noted above.

This purpose is much more than impeachment. The Court will not preclude the complete use of these documents, still, Plaintiff should not now be permitted to change midstream and use these documents with their dual functionality in a greater respect in his primary case other than impeachment. In other words, Plaintiff should not be permitted to proceed at trial with an inconsistent theory for these documents, now that he has avoided the severe prospects of not using these documents for any reasons. Plaintiff should, and will be, held to his legal strategic elections.

Therefore, based upon all of the foregoing, it is hereby Ordered that the February 19, 2001 and March 23, 2001 documents shall be used at trial "solely for impeachment purposes."

SO ORDERED.